**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT GARCIA, | Case No. 1:24-cv-01116 JLT SKO |
| Plaintiff, | ORDER GRANTING MOTION TO REMAND |
| v. | (Doc. 12) |
| FCA US LLC, | |
| Defendant. | |

In this action brought under California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1793.2, Plaintiff moves to remand arguing that the amount in controversy ("AIC") does not meet the jurisdictional minimum for diversity jurisdiction in federal court. (Doc. 12-1 at 10–22.) For the reasons set forth below, the motion is **GRANTED**.

### I. BACKGROUND

In May 2015, Plaintiff purchased a new 2015 Chrysler Town Country Vehicle from the Defendant to use "primarily for family or household purposes." (Doc. 1-3 at 7, ¶ 7; *id*. at 8, ¶ 9; *id*. at 68.) Plaintiff executed a Retail Installment Sale Contract ("RISC") to finance the purchase. (Doc. 1-3 at 68–73.) The vehicle cost the Plaintiff $37,258. (*Id*. at 69.) Of that amount, Plaintiff financed $33,258 and paid $2,500 by trading in another vehicle. (*Id*.) Plaintiff also received a $1,500 manufacturer's rebate, which formed part of the down payment. (*Id*.) The RISC indicates that a $495.71 monthly payment was set to begin on June 1, 2015, and end on August 1, 2021.

1

1  (*Id*. at 68.)  Upon final payment, Plaintiff would have paid $3,920 in interest, resulting in a total
2  sales price of $41,178.25.  (*Id*.)
3        The vehicle "contained various warranties, including but not limited to the bumper-
4  bumper warranty, powertrain warranty, emission warranty, etc." (Doc. 1-3 at 7, ¶ 8; *see also id.*
5  at 18–54.)  "The warranties provided . . . that in the event of a defect . . . during the warranty
6  period, Plaintiff could deliver the [s]ubject [v]ehicle for repair to Defendant's representatives and
7  the . . . [v]ehicle would be repaired." (Doc. 12-1 at 6.)  After using the vehicle, Plaintiff noticed
8  "transmission defects, electrical defects, climate control defects; among other defects and non-
9  conformities" during the "applicable express warranty period." (Doc. 1-3 at 8, ¶ 12.)  Although
10  Plaintiff presented the vehicle for repairs, Defendant "failed to service or repair the [v]ehicle to
11  conform to the applicable express and implied warranties." (Doc. 12-1 at 7; Doc. 1-3 at 13, ¶ 42.)
12        On August 13, 2024, Plaintiff sued in the Superior Court of California, County of Kings
13  for breach of contract in an unlimited civil case where the "[a]mount demanded exceeds
14  $35,000." (Doc. 1-3 at 62.)  Plaintiff claims that under the Song-Beverly Act, Defendant
15  breached its "affirmative duty to promptly offer to repurchase or replace the [s]ubject [v]ehicle at
16  the time it failed to conform . . . to the terms of the express warranty after . . . repair attempts."
17  (Doc. 1-3 at 8, ¶ 15.)  Plaintiff also claims that Defendant's "failure to comply with its obligations
18  under Civil Code section 1793.2, subdivision (d) was willful" because Defendant was aware of its
19  inability to repair the vehicle after reasonable attempts, yet Defendant "refused to promptly
20  replace the [v]ehicle or make restitution." (*Id*. at 12, ¶ 38.)
21        Plaintiff claims damages including "reimbursement of the price paid for the vehicle,"
22  "replacement or reimbursement," "recission of the contract," "cover damages," and "incidental
23  and consequential damages." (Doc. 1-3 at 9, ¶ 17–20.)  The complaint also requests "damages in
24  a sum to be proven at trial in an amount that is not less than $35,001,00," (*Id*. at 9, ¶ 21), and
25  claims that "Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages." (*Id*. at
26  12, ¶ 38.)  Finally, the prayer for relief asks for (1) "general, special and actual damages," (2)
27  "restitution," (3) "consequential and incidental damages," (4) "a civil penalty in the amount of
28  two times Plaintiff's actual damages," (5) "prejudgment interest," (6) "costs of the suit and . . .

2

1    reasonable attorneys' fees," and (7) "other relief as the Court may deem proper." (*Id*. at 15.)

2    On September 19, 2024, Defendant removed the case to federal court under 28 U.S.C. §
3    1332(a)(1) arguing that the amount in controversy exceeds $75,000 and that complete diversity
4    exists between the parties. (Doc. 1 at 2, 8). Defendant claims Plaintiff is a citizen of California,
5    and Defendant, as a limited liability company, is a citizen of every state where its members are
6    citizens. (*Id*. at 8.) Its sole member, FCA North America Holdings LLC, is incorporated in
7    Delaware and has its principal place of business in Michigan, thus complete diversity exists. (*Id*.)
8    Defendant also claims that AIC is met because Plaintiff seeks "at least $35,000 in actual damages,
9    plus a civil penalty of two times that amount ($70,000), plus incidental damages and attorneys'
10   fees." (Doc. 1 at 5.)

11   Specifically, Defendant uses the RISC sales price and Plaintiff's request for an amount
12   "not less than $35,001" to argue that actual damages reach "a minimum of $37,270 in
13   restitution." (*Id*. at 4, 6.) Included in that amount is a $2,713.84 deduction for Plaintiff's use of
14   the vehicle prior to when the defects first manifested themselves, which turns on the date of first
15   repair. (*Id*. at 6.) Defendant claims that the first repair occurred on September 11, 2015, at the
16   8,175-mile mark. (*Id*. at 6 n.1.) As to civil penalties, Defendant relies on the complaint's
17   allegation that Plaintiff is "entitled to a civil penalty . . . two times Plaintiff's actual damages."
18   (*Id*. at 5.) Finally, as to attorney's fees, Defendant relies on a separate Song-Beverly case where
19   Plaintiff's counsel sought over $100,000 in attorney's fees to argue that fees "commonly exceed
20   $25,000" in these cases. (*Id*. at 6.)

21   On October 14, 2024, Plaintiff filed a motion to remand the case back to Kings County
22   Superior Court. (Doc. 12.) Plaintiff does not contest the citizenship of the parties. (Doc. 12-1.)
23   Instead, Plaintiff argues that his request for "an amount not less than $35,001" refers to Plaintiff's
24   total damages. (Doc. 12-1 at 14.) Plaintiff further argues that the $37,270 figure in the RISC
25   does not establish actual damages because the number is speculative, fails to "consider essential
26   facts about the purchase price," (Doc. 12-1 at 13), and fails to establish "Plaintiff's actual
27   payments under the [s]ales [c]ontract." (Doc. 16 at 11.) Plaintiff also contends that Defendant's
28   deduction in damages, for Plaintiff's use of the vehicle, is speculative because Defendant chose

3

"an arbitrary repair visit" and "fail[ed] to identify the purported defect for the alleged repair." (Doc. 12-1 at 14.) As to civil penalties, Plaintiff argues that the Defendant "merely assumes" Plaintiff will recover the maximum penalty with no evidence, (*id.* at 16), and that civil penalties are too speculative because the underlying actual damages are speculative. (*Id.* at 19.) Finally, as to attorneys' fees, Plaintiff argues that the Court cannot consider attorney's fees, but even if it did, Defendant fails to offer sufficient evidence to prove Plaintiff's fee recovery. (Doc. 12-1 at 19–21; Doc. 16 at 12–13.)

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1446, a defendant may remove a state action to federal court if "(1) the case presents a federal question or (2) there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000." *Quinonez v. FCA US LLC*, No. 2:19-cv-2032-KJM, 2020 WL 3397565, at *2 (E.D. Cal. June 19, 2020). A plaintiff may then challenge the removal by filing a motion to remand. 28 U.S.C. § 1447. "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009)

Defendant removed this case based on diversity jurisdiction, (Doc. 1 at 2), and Plaintiff challenges only the jurisdictional amount, (Doc. 12-1 at 10–22). In evaluating AIC, courts first "consider whether it is facially apparent from the complaint that the jurisdictional amount is in controversy." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (citations omitted). When the plaintiff's complaint "does not contain any specific amount of damages sought, the party seeking removal . . . bears the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds the statutory amount." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (citations omitted). The AIC is "an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Id.* at 400.

The removing party's notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). The defendant must support its jurisdictional allegations with "competent proof" and cannot rely on "mere speculation . . . with unreasonable

4

assumptions." *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). The court may consider the complaint, the notice of removal, and the opposition to plaintiff's motion to remand. *Quinonez*, 2020 WL 3397565, at *2. The court may also consider affidavits, declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1197 (citations omitted).

### III.   DISCUSSION

#### A.   Actual Damages

Under the Song-Beverly Act, a plaintiff may recover "restitution in an amount equal to the actual price paid or payable by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B). However, the manufacturer may reduce plaintiff's recovery "by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer . . . for correction of the problem that gave rise to the nonconformity." *Id*. at § 1793.2(d)(2)(C). This reduction in damages is commonly referred to as the "[u]se [o]ffset." *Schneider v. Ford Motor Co.*, 756 Fed. Appx. 699, 701 (9th Cir. 2018). To calculate the use offset, the Defendant must multiply the amount Plaintiff paid for the vehicle by a fraction, where the denominator is 120,000 and the numerator is the number of miles the buyer drove between purchase and the first relevant repair for the nonconformity. Cal. Civ. Code § 1793.2(d)(2)(C).

Though courts generally do not reduce the amount in controversy by affirmative defenses, the Ninth Circuit holds that in Song-Beverly cases, the use offset should be deducted from the jurisdictional amount. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (explaining that "unless the law gives a different rule, the sum claimed by the plaintiff controls," even when "the complaint discloses the existence of a valid defense to the claim"); *Schneider*, 756 Fed. Appx. at 701 n.3 ("Consideration of the [u]se [o]ffset was appropriate. We have recognized that an estimate of the amount in controversy must be reduced if 'a specific rule of law or measure of damages limits the amount of damages recoverable.'") (citations omitted).

##### 1.   Generic Damage Allegations

In his complaint, Plaintiff did not specify the amount of actual damages sought but

requested "an amount not less than $35,001" and sought "restitution" in his prayer for relief. (Doc. 1-3 at 9, ¶ 21; *id.* at 15.)  The Court first assesses whether Plaintiff's request for an amount "not less than $35,001" refers to *actual* damages or *total* damages (e.g., restitution, civil penalties, attorney's fees, etc.).  Defendant argues that the phrase refers to actual damages because $35,001 falls within range of the $37,270 restitution award in this case, as evidenced by the RISC.[1] (Doc. 1 at 5–6; *see also* Doc. 15 at 4.)  Plaintiff argues that the phrase refers to total damages and that the RISC is speculative because Defendant fails to establish "essential facts about the purchase price" or "actual payments under the Sales Contract."  (Doc. 12-1 at 11,13; Doc. 16 at 11.)

California district courts are split on whether a defendant can rely on generic damage allegations to establish actual damages.  Some courts hold that where the plaintiff lists damages separately from penalties in the complaint, the court can assume that sums referred to as "damages" mean actual damages.  *E.g.*, *Coronel v. Ford Motor Co.*, No. CV 19-09841 DSF (JEM), 2020 WL 550690, at *6 (C.D. Cal. Feb. 4, 2020) (finding amount in controversy met where the complaint alleged damages "in an amount not less than $25,001" and a "civil penalty of two times Plaintiff's actual damages"); *McDonald v. BMW of N. Am., LLC*, No. 3:17-CV-2011-CAB-BLM, 2017 WL 5843385, at *1 (S.D. Cal. Nov. 28, 2017).  Other courts require additional evidence to equate generic assertions of damages to actual damages.  *E.g., Mullin v. FCA*, No. CV 20-2061-RSWL-PJW, 2020 WL 2509081, at *3 (C.D. Cal. May 14, 2020); *Cox v. Kia Motors Am., Inc.*, No. 20-cv-02380-BLF, 2020 WL 5814518, at *2–4 (N.D. Cal. Sept. 30, 2020) (finding that plaintiff's allegation that they suffered damages in an amount "not less than $25,001" was ambiguous and insufficient to meet the jurisdictional minimum).

This Court has adopted the latter approach, requiring evidence in addition to the complaint's generic damage allegation to determine actual damages.  *West v. FCA US LLC*, No. 1:24-cv-00293-JLT-CDB, 2024 WL 3298911, at *3 (E.D. Cal. 2024); *Quinonez*, 2020 WL 3397565, at *3.  Specifically, this Court has "looked to the purchase agreement of the vehicle . . .

---

[1] Defendant explains that the $37,270 figure was calculated using the "total amount paid for the vehicle ($37,258 (*see* Retail Installment Contract, Line 5, Exhibit "E" to Skanes Decl.), [plus] finance charges ($3,920.07), less Theft Deterrent Device ($399) (*id.*, Lines 1(D)), less Optional Gap Contract ($795, Line 1(R)), and less a reasonable allowance for use in the amount of $2,713.84."  (Doc. 1 at 6.)

6

to guide the interpretation of the damages sum stated in the complaint." *West*, 2024 WL 3298911, at *3. *Quinonez* found it more likely than not that plaintiff's demand for damages "exceed[ing] $25,000" referred to actual damages not total damages, because the retail installment contract indicated a $31,500 purchase price for the vehicle. *Quinonez*, 2020 WL 3397565, at *2–3. "Given the closeness between the sales price ($31,500) and the stated sum ($25,000), particularly in light of a potential statutory offset, the sales price indicated that the stated sum in the complaint corresponded to actual damages." *West*, 2024 WL 3298911, at *3 (discussing this Court's reasoning in *Quinonez*). This Court explained that the purchase agreement was an accurate measure of actual damages because, if plaintiff prevailed, defendant would have to "pay restitution to her for payments made on the sales contract and pay off the balance of [p]laintiff's loan, on her behalf, to the lienholder of the [v]ehicle." *Quinonez*, 2020 WL 3397565, at *3.

Using this approach, the Court finds that the phrase in Plaintiff's complaint requesting an amount "not less than $35,001" refers to actual damages. Defendant attached a copy of the RISC to its notice of removal.[2] (Doc. 1-3 at 68–73.) As such, Defendant provided evidence beyond the face of the complaint in support of removal. As the RISC indicates, the vehicle cost the Plaintiff $37,258, excluding $3,920 in finance charges. (Doc. 1-3 at 68–69.) The closeness between the sales price ($37,258), or sales price with finance charges ($41,178), and the stated sum ($35,001) serves as competent proof of actual damages. *West*, 2024 WL 3298911, at *3. This is especially true when considering that the statutory offset will only reduce Plaintiff's total recovery. *Id*. As in *Quinonez*, the Plaintiff requests "restitution," which would include recovery of around $41,178 in the form of payments already made and release from plaintiff's obligations under the loan. (Doc. 1-3 at 15); *Quinonez*, 2020 WL 3397565, at *3 (explaining that plaintiff could recover "$31,500 in the form of [] payments made to date" and "the value of the release from her personal loan"). Thus, this amount accurately reflects the actual damages at issue in this case.

Contrary to Plaintiff's position, Defendant does not need to prove "actual payments" made

---

[2] Plaintiff does not dispute the admissibility or accuracy of the RISC, or the information contained therein, rather only that Defendant cannot rely on the RISC alone without providing "essential facts about the purchase price," such as "facts indicating how many payments had been made" under the sales contract. (Doc. 12-1 at 13.)

7

under the sales contract to establish actual damages. (Doc. 12-1 at 13; *see also* Doc. 16 at 11); *Quinonez*, 2020 WL 3397565, at *3. While this is true in the contexts of leases, it is not true for purchase agreements. As this Court explained in *West*, "limiting the lessee-plaintiff's recovery to payments 'actually made' was consistent with the Song-Beverly Act's 'logic and purpose . . . to make the consumer whole' as well as 'the general principle of *restitution* embodied in Cal. Civ. Code § 1793.2(d)(2)(B) . . . .'" *West*, 2024 WL 3298911, at *5 (citing *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002)). There, the AIC was not met because defendant failed to "indicate the amount of lease payments [p]laintiff made" on the $22,921.34 lease agreement. *Id.* at *4 n.3, 5.

The same is not true for purchase agreements. *West*, 2024 WL 3298911, at *5 ("In cases involving a purchase, courts have emphasized the contrast between leases and purchases in determining actual damages calculations."). As *Messih* explained, the purchase price listed in the retail installment sales contract is sufficient to establish actual damages under the Song-Beverly Act. *Messih v. Mercedes-Benz USA, LLC*, No. 21-cv-03032-WHO, 2021 WL 2588977, at *4 (N.D. Cal. June 24, 2021). *Messih* expressly rejected plaintiff's argument that proof of actual payments was necessary for defendant to prevail. *Id*. at *4 n.3 (explaining that because plaintiff "purchased the subject vehicle," the amount paid or payable on the contract is reflective of the "damages he will be seeking" and that plaintiff's reliance on contrary caselaw is "misplaced" because such cases involved lease agreements, not purchase agreements).

Plaintiff's argument that Defendant must prove actual payments under the contract likewise fails because this case involves a purchase agreement, not a lease agreement.[3] *Id*.; *see*

---

[3] Plaintiff relies on a series of cases, none from the Eastern District of California, to argue that Defendant is required to prove actual payments when establishing damages for AIC upon removal. (*See* Doc. 12-1 at 13–14; Doc. 16 at 11.) However, at least two of these cases involved leases, not purchases. *Lopez v. FCA US LLC*, No. 2:19-cv-07577-RGK-MRW, 2019 WL 4450427, at *1 (C.D. Cal. Sept. 16, 2019) ("Plaintiff's allegations arise from a lease of a vehicle from [d]efendant."); *Ghayaisi v.Subaru of Am., Inc.*, No. 2:20-cv-00467-RGK-SK, 2020 WL 1140451, at *1 (C.D. Cal. Mar. 6, 2020) ("Plaintiff leased the vehicle . . ."). At least two of those cases involved a defendant relying on the manufacturer's suggested retail price ("MSRP"), as opposed to the actual sales price of the vehicle. *Chajon v. Ford Motor Co.*, No. 2:18-cv-10533-RGK, 2019 WL 994019, at *1 (C.D. Cal. Jan. 8, 2019) (rejecting the defendant's alleged number of actual damages because "no sales contract ha[d] been located . . . only the MSRP" and there was "no indication as to the actual agreed-upon sale amount"); *Steeg v. Ford Motor Co.*, No. 19-cv-05833-LHK, 2020 WL 2121508, at *4 (N.D. Cal. May 5, 2020) (rejecting defendant's suggested number of actual damages because defendant relied on the "suggested retail price for the [v]ehicle" which would require the court to "speculate as to the *actual* purchase price"). At least one case involved a defendant relying solely on plaintiff's generic damage

8

*Quinonez*, 2020 WL 3397565, at *3 ("Plaintiff's focus on payments . . . mischaracterizes the amount in controversy as a 'prospective assessment of defendant's liability' as opposed to the 'estimate of the total amount in dispute.'"). The RISC clearly indicates, "[b]y signing this contract, you choose to buy the vehicle on credit under the agreements . . . ." (Doc. 1-3 at 68.) Accordingly, the Court finds more likely than not that Plaintiff's request for an amount "not less than $35,001" refers to actual damages alone.

### 2.  Mileage Use Offset Calculation

The Court next assesses whether Defendant's offset calculation is accurate. There must be sufficient evidence that the use offset does not reduce the AIC to a level below the jurisdictional minimum. *Villegas v. Ford Motor Co.*, No. 1:22-cv-01628-ADA-SAB, 2023 WL 3144540, at *7 (E.D. Cal. April 28, 2023). This is particularly true because Plaintiff requests "reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiff prior to the first presentation to an authorized repair facility for a nonconformity." (Doc. 1-3 at 9); *Villegas*, 2023 WL 3144540, at *7. The calculation itself must also be accurate pursuant to California Civil Code § 1793.2(d)(2)(C). The Court finds that the Defendant does not meet its burden of proving the offset deduction, and hence actual damages, for AIC upon removal.

In its notice of removal, Defendant included a $2,713.84 deduction for Plaintiff's use offset in its total measure of restitution, (Doc. 1 at 6), and explained that this number was based on "the first attempted repair" which "occurred on September 11, 2015, at 8,175 miles." (Doc. 1 at 6 n.1.) Hence, this is not a situation where the Defendant failed to include a mileage offset

---

allegations in the complaint, without producing a copy of the purchase agreement. *Edwards v. Ford Motor Co.*, No. CV 16-05852 BRO, 2016 WL 6583585, at *4 (C.D. Cal. Nov. 4, 2016) ("Defendant has not produced any evidence about the value of the actual damages in this case"). Finally, while the remaining cases do involve the purchase of a vehicle, these cases are unpersuasive because they go beyond the court's holding in *Brady*, 243 F. Supp. 2d at 1008, which was limited to lease agreements, and involve the defendant's failure to account for finance charges or use offset. *See Echemendia v. Subaru of Am., Inc.*, No. 2:20-cv-09243-MCS-JEM, 2020 WL 7311348, at *2 (C.D. Cal. Dec. 11, 2020) ("[Defendant] inexplicably cites the $36,141.68 purchase price as Plaintiff's actual damages without accounting for finance charges, evidence concerning when repairs were made, or anything else that could allow the [c]ourt to reliably estimate actual damages."); *Jackson v. Mercedes-Benz USA, LLC*, No. 5:20-CV-01681-DOC-KK, 2020 WL 7090839, at *2 (C.D. Cal. Dec. 2, 2020) (citing *Brady* and explaining that "a plaintiff's recovery is limited to the actual payment amount to the seller"); *Savall v. FCA US LLC*, No. 21-cv-195-JM (KSC), 2021 WL 1661051, at *2 (S.D. Cal. Apr. 28, 2021) (citing *Echemendia* and *Jackson*, and rejecting defendant's proposed sum of damages because defendant failed to "argue that [p]laintiff made all payments" under the installment contract).

altogether.  *Cf West*, 2024 WL 3298911, at *3 (granting plaintiff's motion for remand, in part, because defendant "did not include a use offset"); *Newsome v. FCA USA LLC*, No. 1:20-cv-01189-JLT-BAK, 2022 WL 408631, at *4 (E.D. Cal. Feb. 10, 2022) (explaining that, even if the court accepts the complaint's generic request for $25,000 as actual damages, jurisdiction is improper for lack of "indication in the record or estimation in the briefing as to the appropriate use offset").  However, Defendant nonetheless fails to explain why the proffered offset amount is accurate.  Defendant offers no explanation for why September 11, 2015 constitutes a date of material repair, includes no description of the defect complained about, and provides no copy of the repair order submitted on that date.  (*See* Doc. 1; Doc. 1-3.)

According to the Plaintiff, the offset calculation is speculative because Defendant chose "an arbitrary repair visit" and "fails to identify the purported defect for the alleged repair at the [v]ehicle's 8,175 mileage mark."  (Doc. 12-1 at 14.)  Plaintiff adds that Defendant's failure to provide "a history of the [v]ehicle's warranty repairs or copies of the [v]ehicle's warranty repair orders" makes its calculation untenable, especially because Plaintiff "plead a multitude of defects."  (*Id*. at 15.)  Plaintiff offers two cases from the Central District of California in support of this proposition, which this Court finds persuasive.  (Doc. 12-1 at 16; Doc.16 at 11.)

In those cases, remand was proper, in part, because defendant failed to "adduce evidence showing why the mileage offset should be calculated based on [the first visit] instead of [plaintiff's] subsequent visits to fix other complained-of defects."  *Gutierrez v. Ford Motor Co.*, No. 2:21-cv-05679-MCS-JPR, 2021 WL 4399517, at *2 (C.D. Cal. 2021); *Jones v. FCA US, LLC*, No. CV-22-859-JFW (GJSx), 2022 WL 1154534, at *2 (C.D. Cal. April 18, 2022) ("Defendant fails to provide any factual or legal basis as to why the statutory mileage offset should be based on the odometer reading the first time [p]laintiffs brought the [s]ubject [v]ehicle in for repair.").  In *Gutierrez*, the record indicated that plaintiff "sought repairs . . . when the odometer read 504, 5,993, 15,332, 24,634, 34,537 miles" and thus it was unclear which repair visit provided the proper measure of damages.  2021 WL 4399517, at *2.  The court explained, that "[i]f based on a later visit, the mileage offset would significantly diminish the measure of actual damages."  *Id*.  Similarly, in *Jones*, the record indicated that the plaintiffs had "driven the

1  [s]ubject [v]ehicle for nearly eight years" and therefore it was possible that the plaintiffs drove the
2  car for many miles before taking it in for repair. 2022 WL 1154534, at *2 (citations and
3  quotations omitted).

4　　　　Here, it is similarly unclear whether Defendant's proffered date of repair reflects the date
5  in which the first material defect manifested itself. In his complaint, Plaintiff alleges that
6  Defendant "undertook to perform various repair measures," (Doc. 1-3 at 11), made a "reasonable
7  number of repair attempts," (Doc. 1-3 at 8), and was "unable to service or repair the [v]ehicle . . .
8  after a reasonable number of opportunities." (Doc. 1-3 at 12.) Plaintiff also alleges that there
9  were a multitude of defects that "manifested themselves within the . . . warranty period." (Doc.
10 1-3 at 8.) Based on these allegations, the Court concludes that Plaintiff presented his vehicle for
11 repairs on multiple occasions. Yet Defendant fails to explain why a mileage offset "based on the
12 first visit," as opposed to the "second visit," or "subsequent visits to fix other complained-of
13 defects" is more appropriate. *Gutierrez*, 2021 WL 4399517, at *2. Defendant does not describe
14 the defect presented on September 11, 2015, or explain whether such defect is one covered by the
15 contract's express and implied warranties. (Doc. 1-3 at 23–39); Cal. Civ. Code § 1791.1(a).
16 Defendant thus fails to meet its burden of proof upon removal. *Lewis*, 627 F.3d at 397 ("[T]he
17 party seeking removal . . . bears the burden of showing, by a preponderance of the evidence, that
18 the amount in controversy exceeds the statutory amount."); *McNutt*, 298 U.S. at 189 ("If his
19 allegations of jurisdictional facts are challenged by his adversary . . . he must support them by
20 competent proof.").

21　　　　Moreover, in cases where this Court has accepted the defendant's offset calculation, it has
22 done so when the amount was uncontested, or when the defendant submitted evidence proving the
23 date of first material repair. *See Hernandez v. FCA US LLC*, No. 1:21-cv-0745-JLT-HBK, 2022
24 WL 819857, at *4 (E.D. Cal. March 18, 2022) (accepting defendant's offset deduction of
25 $6,912.79—calculated using the defendant's purported date of first repair at the 36,343 mile
26 mark—because plaintiff did not contest these facts); *Fang v. Ford Motor Co.*, No. 1:22-cv-0561-
27 JLT-SAB, 2022 WL 3444715, at *6 (E.D. Cal. Aug. 17, 2022) (accepting defendant's offset
28 calculation because the "[p]laintiffs d[id] not dispute the accuracy of this calculation"). In

*Villegas*, this Court accepted defendant's offset calculation for establishing AIC because defendant offered "a pointed calculation based on evidence of the service records pertaining to the [s]ubject [v]ehicle." *Villegas*, 2023 WL 3144540, at *8. There, the defendant submitted copies of two different repair orders, each of which indicated the kind of defect (e.g., "ticking sound coming from the engine" and "issues pertaining to the battery and wiper motor"), the date of repair, and the odometer reading at that time. *Id*.

Similarly in *Cabrera*, this Court found that the defendant's offset calculation accurately reflected the AIC because the defendant provided "a detailed proposed calculation," which included a copy of the repair order indicating the date of repair, the odometer reading, and the alleged defect (e.g., "[e]lectrical [c]oncern . . . interior lights flicker on and off"). *Cabrera v. FCA US LLC*, No. 1:22-cv-00431-NODJ-BAM, 2023 WL 8477970, at *2 (E.D. Cal. Dec. 7, 2023) (citing the record at Opp'n at 5, ECF No. 9). Here, Defendant fails to provide a copy of the repair orders from the September 11, 2015, and fails to describe the defect that prompted Plaintiff's visit that day. (*See* Doc. 1 at 6; Doc. 1-3.) Further, this Court cannot accept Defendant's offset calculation as uncontested because Plaintiff challenges Defendant's calculation as speculative. (Doc. 12-1 at 14.) Accordingly, this Court finds that Defendant's offset amount is insufficient to establish actual damages for AIC.

While in one instance, a judge in the Eastern District of California accepted the defendant's offset calculation based solely on the defendant's "assumption" that the plaintiff had driven the vehicle for 4,500 miles prior to presenting the vehicle for material repairs, that case is distinguishable. *See Cortez Martinez v. Ford Motor Company*, No. 1:18-cv-01607-LJO-JLT, 2019 WL 1988398, at *4–5 (E.D. Cal. May 6, 2019) (finding that defendant's offset calculation was "not speculative" because it was based on a reasonable estimate of the maximum miles plaintiff could have driven while still being covered by the implied warranty). There, "since [p]laintiffs state claims of violation of the implied warranty of merchantability," it was "reasonable to presume [p]laintiffs' vehicle was presented to [d]efendant within that 3-month time frame" since that is the "maximum duration" the vehicle would have been covered by the implied warranty. *Id*. at *4–5. Put differently, if plaintiffs drove their vehicle for more than three

12

1  months before bringing their car in for repairs, their coverage under the implied warranty would
2  have expired. *Id*. In reaching this holding, the Court relied on California Civil Code § 1795.5(c),
3  which pertains to the sale of used goods. *Id*. at *4 ("[I]n no event shall implied warranties have a
4  duration of . . . more than three months following the sale of used consumer goods to a retail
5  buyer.").

6  However, here, Plaintiff purchased a new vehicle, (Doc. 1-3 at 68), which means that the
7  maximum period of coverage for the implied warranty is one year after the purchase date. *See*
8  Cal. Civ. Code § 1791.1(c) ("[I]n no event shall such implied warranty have a duration of . . .
9  more than one year following the sale of new consumer goods"); *cf. Cortez Martinez*, 2019 WL
10  1988398, at *1 ("Plaintiffs purchased a used 2010 Ford Escape"). Furthermore, in determining
11  the use offset, this Court cannot rely on the "outer limits" of the implied warranty alone because
12  Plaintiff asserts claims under both express and implied warranties. (Doc. 1-3 at 8, 12, 14); *cf.*
13  *Cortez Martinez*, 2019 WL 1988398, at *4–5 (relying solely on the coverage period for the
14  implied warranty of merchantability). Depending on the covered defect for which Plaintiff first
15  sought repairs, the warranty period may last one year, three years (e.g., the basic limited express
16  warranty), or five years (e.g., the powertrain limited express warranty). (*See* Doc. 1-3 at 23–30).

17  For instance, Plaintiff alleges claims for "transmission defects," (Doc. 1-3 at 8), which fall
18  under the powertrain limited warranty and "lasts for up to [five] years or 100,000 miles on the
19  odometer, whichever occurs first," (Doc. 1-3 at 28–29). In determining use offset, this Court
20  cannot rely on the maximum length of any one warranty because Plaintiff alleges various defects
21  arising under various warranties, each with differing periods of coverage. Otherwise, the Court
22  would have to arbitrarily choose between one of the maximum coverage periods, which would
23  not provide a reasonable estimate of damages. Furthermore, if this Court used the outer limits of
24  the five-year express warranty or 100,000 miles to establish the date of first repair, it is unclear
25  whether Defendant would prevail in proving AIC because such measure would "significantly
26  diminish the [number] of actual damages." *Gutierrez*, 2021 WL 4399517, at *2.

27  Without more information regarding the September 11, 2015, repair date, this Court
28  cannot reasonably determine "the time the buyer first delivered the vehicle . . . for correction of

the problem that gave rise to the nonconformity." Cal. Civ. Code § 1793.2(d)(2)(C). There are no facts indicating Plaintiff delivered his vehicle for repair of a material defect covered by a warranty on that date. (*See* Doc. 1 at 6 n.1.) If instead Plaintiff presented his vehicle for "normal or scheduled maintenance" or for "damage caused by poor or improper maintenance," such repair would not be covered by the warranty, (Doc. 1-3 at 33), and the selected repair date would not serve as an accurate measure for Plaintiff's use offset since it would not constitute a "nonconformity." Absent these details, the Court cannot reasonably determine whether the use offset reduces the AIC to a level below the jurisdictional minimum. Accordingly, Defendant fails to meet its burden to show actual damages reach $37,270 in restitution.[4] (*See* Doc. 1 at 6.)

### B. Civil Penalties

The Song-Beverly Act provides that a buyer may recover "a civil penalty of up to two times the amount of damages" if the manufacturer or seller "willfully" violated a warranty or provision of the Act. Cal. Civ. Code § 1794(c); *see also Ramos v. FCA US LLC*, 385 F. Supp. 3d 1056, 1070–71 (E.D. Cal. 2019) (explaining that civil penalties may be imposed for the willful failure of "vehicle manufacturers to promptly replace or pay restitution for their lemon vehicles"). Generally, this civil penalty is properly included in determining the amount in controversy, as "the civil penalty under the Song-Beverly Act is akin to punitive damages, because both have the dual effect of punishment and deterrence for defendants." *Brady*, 243 F. Supp. 2d at 1008; *Hernandez*, 2022 WL 819857, at *4. However, "[i]f the amount of actual damages is speculative,

---

[4] Even if Defendant had justified the chosen date of repair, there are other problems with its calculation. Defendant fails to use the "actual price . . . paid or payable by the buyer" when calculating the use offset. *See* Cal. Civ. Code at § 1793.2(d)(2)(C). Defendant asserts that the use offset is $2,713.84, which he calculated "by taking 7,881 miles (the milage at the first alleged repair less the 294 miles at delivery) divided by 120,000 multiplied by the purchase price of $33,100 (Retail Installment Sales Contract, Line 1.A, Ex. "E" to Skanes Decl.)." (Doc. 1 at 6, 6 n.1.) The actual output of Defendant's proposed calculation (7,881 miles divided by 120,000 multiplied by $33,100) is $2,173.84. In making this calculation, Defendant fails to explain why it used the cash price of the vehicle ($33,100) as opposed to the total sales price ($41,179). (*See* Doc. 1-3 at 68–69.) The total sales price includes, among other things, the cash price of the vehicle, finance charges, licensing fees, processing fees, and plaintiff's down payment. (Doc. 1-3 at 68–69.) Therefore, $41,179 more accurately reflects the "actual price paid" for purposes of determining the use offset. Using the total sales price of $41,179 renders a larger offset deduction (e.g., 7,881 miles divided by 120,000 multiplied by $41,179 equals $2,704). Additionally, Defendant fails to deduct the manufacturer's rebate of $1,500, (Doc. 1-3 at 69), from Plaintiff's total restitution. *See Hernandez*, 2022 WL 819857, at *3 ("Similarly, because a manufacturer's rebate reduces 'the actual price paid,' a rebate amount should be excluded from the calculation.") (citations omitted). In any event, without the correct input as to the mileage on the date of the first material repair, this Court cannot assess the total number of damages and whether these errors affect the calculation in a material way.

[] an attempt to determine the civil penalty is equally uncertain." *West*, 2024 WL 3298911, at *6 (citations omitted).

In the complaint, Plaintiff alleged that Defendant's "failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant . . . [was] aware that [it] was unable to service or repair the [v]ehicle to conform to the . . . warranties after a reasonable number of repair attempts." (Doc. 1-3 at 12, ¶ 38.) Plaintiff claims that this entitles him to "a civil penalty of two times Plaintiff's actual damages" and reiterates this in the prayer for relief. (*Id.*; Doc. 1-3 at 15.) This Court and others previously determined that when, as here, a plaintiff alleges that Defendant's conduct was willful and the prayer for relief includes a request for civil penalties "in an amount not to exceed two times the amount of Plaintiff's actual damages," inclusion of civil penalties in the AIC is appropriate. *See, e.g., Quinonez*, 2020 WL 339756, at *3; *Cortez Martinez*, 2019 WL 1988398, at *7 (where the plaintiff alleged that defendant's failure to comply with the Song-Beverly Act was willful and the prayer for civil penalty in an amount two times actual damages, the civil penalties were "expressly placed in controversy by the complaint").

Because Plaintiff clearly pled that Defendant acted willfully in failing to comply with the Song-Beverly Act, and the prayer for relief asks for double the number of actual damages, this specific amount was placed in controversy.[5] *Hernandez*, 2022 WL 819857, at *5; *see also Fang*,

---

[5] Contrary to Plaintiff's assertion, Defendant is not required to present evidence that it willfully violated the Song-Beverly Act to include civil penalties in the damage's calculation. (Doc. 12-1 at 16–19.) Plaintiff cites a series of cases—none from the Eastern District of California—which require "some showing regarding the possibility of civil damages" apart from relying on a plaintiff's boilerplate allegations in the complaint. *E.g., Savall*, 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021) (rejecting the inclusion of the full civil penalty amount in the AIC because "[o]ther than referring to Plaintiff's allegation that FCA acted willfully . . . FCA provides no support for the likelihood that a civil penalty based on its willfulness would actually be awarded"); *Echemendia*, 2020 WL 7311348, at *2 (C.D. Cal. Dec. 11, 2020) ("[Defendant] cites no allegations suggesting the type of willfulness required to justify civil penalties, let alone has it demonstrated how much those penalties might be."). Such cases are not controlling, nor do they reflect how this Court has approached the issue. *See e.g., Cabrera*, 2023 WL 8477970, at *2 ("This court has determined that when a plaintiff both alleges that a defendant's violations of the Song-Beverly Act are willful and requests a civil penalty, the court must assume the amount in controversy includes the full civil penalty). Instead, this Court has found that such evidence is not necessary on removal because "Defendant is not required to prove the case against itself." *Fang*, 2022 WL 3444715, at *7 (citations omitted); *see also Hernandez*, 2022 WL 819857, at *5 (allowing the inclusion of civil penalties in the AIC based solely on plaintiff's request for twice the number of actual damages and plaintiff's allegation that defendant's conduct was willful). *Fang* explained that a defendant must only show by a preponderance of evidence that the complaint seeks the maximum civil penalty authorized by the Song-Beverly Act, not that plaintiff will actually receive it. *Fang*, 2022 WL 3444715, at *7 (citations and quotations omitted). "It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act, given that most defendants . . . will deny that it willfully failed to comply . . . ." *Id* (citations

15

1  2022 WL 3444715, at *8.  However, as Plaintiff notes, because the number of actual damages is
2  uncertain, the number of civil penalties is equally uncertain.  (Doc. 12-1 at 19); *West*, 2024 WL
3  3298911, at *6 ("Because [d]efendant did not establish the amount of actual damages by a
4  preponderance of the evidence, the amount of civil penalties is equally uncertain."); *Newsome*,
5  2022 WL 408631 at *5.  As explained above, Defendant's estimated sum of actual damages is
6  speculative because the use offset calculation relies on unsupported claims regarding the date of
7  first repair.  Defendant therefore failed to satisfy its burden of proof required to include civil
8  penalties in the jurisdictional amount.  *West*, 2024 WL 3298911, at *6.

### C. Attorney's Fees and Costs

Under the Song-Beverly Act, if the buyer prevails in the action, "the buyer shall be allowed to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended."  Cal. Civ. Code § 1794(d). Plaintiff argues that this Court should not consider attorney's fees in calculating the AIC due to the "split in authority" across district courts in the Ninth Circuit.  (Doc. 16 at 12.)  However, this Court has repeatedly considered attorney's fees when calculating the AIC.  *See e.g.*, *Cortez Martinez*, 2019 WL 1988398, at *7 ("An award of attorneys' fees may be considered in calculating the amount in controversy."); *Newsome*, 2022 WL 408631, at *5–6; *West*, 2024 WL 3298911, at *6–7.  Relying on Ninth Circuit precedent, this Court explained that district courts are free to include future attorney's fees awards when determining the AIC.  *Newsome*, 2022 WL 408631, at *5 (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018)).  However, district courts may also exclude such awards if they are "too speculative" or if the defendant fails to prove by a preponderance of evidence that the AIC exceeds the jurisdictional threshold.  *Id.*; *Fritsch*, 899 F.3d at 795.

To that end, Plaintiff contends that Defendant fails to meet its burden of proving Plaintiff's projected fee recovery for the AIC.  (Doc. 12-1 at 20.)  In establishing attorney's fees, Defendant's counsel points to his experience, and a separate Song-Beverly case where Plaintiff's counsel sought over $100,000 in attorney's fees to argue that fees "commonly exceed $25,000" in

omitted).  Thus, Plaintiff's argument fails on this front.

16

1  these types of cases.  (Doc. 1 at 6; Doc. 1-3 at 3.)  According to Plaintiff, Defendant's reliance on

2  such evidence is "insufficient" because it offers no insight into the "facts . . . of *this* case" or the

3  "value of attorneys' fees Plaintiff is expected to incur."  (Doc. 12-1 at 20–21.)  The Court agrees

4  with Plaintiff—none of the evidence supports Defendants' theory that attorneys' fees amount to

5  more than $25,000.  A declaration stating that in the defense counsel's "experience litigating such

6  cases, claims for attorneys' fees through litigation commonly exceed $25,000" is insufficient to

7  prove attorney's fees for AIC.  *See Hernandez*, 2022 WL 819857, at *5–6 (rejecting the very

8  same assertion regarding counsel's "experience litigating such cases" as "lack[ing] the

9  evidentiary support that may allow for the inclusion of fees").  "Defendant's lump sum estimate

10  does not delineate the amount of time major tasks will take or approximate the hourly billing

11  rate."  *Newsome*, 2022 WL 408631, at *6.

12  Furthermore, Defendant's reliance on the $108,135.31 fee sought by Plaintiff's counsel in

13  another Song-Beverly case, (Doc. 1-3 at 3, 75–76), does not prove by the preponderance of

14  evidence what the future fees will be in *this* case.  *See West*, 2024 WL 3298911, at *6 (rejecting a

15  similar assertion, where defendant claimed that attorneys' fees exceeded $65,00 based on

16  plaintiff's counsel's "regular request [for] more than $65,000 in fees" in Song-Beverly cases).  As

17  *Schneider* best explained:

> Defendants fail to explain how that case accords with this case. All that Defendants claim is that the same counsel appears in each case and that the subject-matter of the cases are the same. They do not, however, compare or contrast the litigation strategies or the litigation timelines of the two cases.

21  *Schneider v. Ford Motor Co.*, 441 F. Supp. 3d 909, 914 (N.D. Cal. 2021); (*see also* Doc. 1-3 at

22  3).  Similarly, here, Defendant's counsel fails to explain how the case he cites is analogous to the

23  present case.  (Doc. 1-3 at 3.)  Defendant merely states that the case is "a very similar matter" and

24  that plaintiff's counsel sought over $100,000 "prior to the case even reaching trial."  (*Id.*)

25  However, Defendant fails to acknowledge that such case went through discovery, "numerous

26  meet and confer conferences," "a motion to compel" and was not settled until the "eve of trial"

27  after "substantial litigation" had been conducted.  (Doc. 1-3 at 80–81.)  Therefore, Defendant's

28  bare comparison to a separate "similar" case fails to establish the estimated attorney's fees in this

17

1  case. Nor does it meet the threshold of evidentiary support that typically allows for the inclusion
2  of fees. *Cf. Cortez Martinez*, 2019 WL 1988398, at *7 (including attorney's fees in the AIC
3  where defendant submitted "five petitions for attorneys' fees filed in other similar cases by the
4  same counsel"). In sum, the Court rejects the inclusion of Defendant's $25,000 estimate of
5  attorney's fees to form part of the AIC.

## IV.    CONCLUSION AND ORDER

Without sufficient evidence to calculate the use offset, Defendant's estimated actual damages are uncertain, thereby rendering the number of civil penalties equally uncertain. Defendant also fails to prove the estimated number of attorney's fees. Accordingly, Defendant has not met its burden of proving AIC for diversity jurisdiction upon removal. For the reasons set forth above, the Court **ORDERS**:

1. Plaintiff's motion to remand (Doc. 12) under 28 U.S.C. § 1447(c) is **GRANTED**.
2. Defendant's motion to dismiss (Doc. 4) is **DENIED AS MOOT**; and
3. The Clerk of Court is directed to remand this case to the Kings County Superior Court.

IT IS SO ORDERED.

Dated:   **October 22, 2025**                              /s/ Jennifer L. Thurston
                                                          UNITED STATES DISTRICT JUDGE